UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BRIAN JULIAN,

                    Plaintiff,

v.                                                                                         1:19-CV-0222
                                                                                         (ML)

APPLIED ROBOTICS, INC.,

                    Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| BLAU LEONARD LAW GROUP LLC<br>  Co-Counsel for Plaintiff<br>23 Green Street, Suite 105<br>Huntington, New York 11743 | SHELLY A. LEONARD, ESQ.<br>STEVEN BENNETT BLAU, ESQ. |
| HINMAN, HOWARD LAW FIRM<br>  Co-Counsel for Plaintiff<br>80 Exchange Street, 700 Security Mutual Building<br>Binghamton, New York 13902-5250 | DAWN J. LANOUETTE, ESQ.<br>LESLIE PRECHTL GUY, ESQ. |
| WHITEMAN, OSTERMAN LAW FIRM<br>  Counsel for Defendant<br>One Commerce Plaza, Suite 1900<br>Albany, New York 12260 | HEATHER D. DIDDEL, ESQ.<br>ERIN M. CALLAHAN, ESQ.<br>ROBERT S. ROSBOROUGH, ESQ. |

MIROSLAV LOVRIC, United States Magistrate Judge

## **DECISION and ORDER**

      Currently before the Court, in this Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201

*et seq.*, action filed by Brian Julian ("Plaintiff") against Applied Robotics, Inc. ("Defendant"), is

a proposed settlement agreement, which has been forwarded to the Court for approval. (Dkt. No. 36; Dkt. No. 38.) For the reasons set forth below, the Court rejects the settlement agreement.[1]

## I. RELEVANT BACKGROUND

Plaintiff commenced this action on February 18, 2019. (Dkt. No. 1.) Plaintiff alleges that he was employed by Defendant "[a]t all times material and relevant." (Dkt. No. 1 at ¶ 11.) Plaintiff asserts the following two claims: (1) Defendant intentionally and knowingly treated him as an exempt employee to circumvent overtime pay requirements pursuant to § 213(a) of the FLSA; and (2) Defendant intentionally and knowingly treated him as an exempt employee to circumvent overtime pay requirements pursuant the New York Labor Law ("NYLL") § 661 and 12 N.Y.C.R.R. § 472.2. (*Id*. at ¶¶ 22-25.) Plaintiff alleges that Defendant failed to pay him proper overtime wages and as a result, Plaintiff seeks (1) unpaid overtime wages, (2) liquidated damages, (3) prejudgment interest, and (4) costs and attorneys' fees. (*See generally* Dkt. No. 1.)

On February 14, 2020, the Court received notification from the parties that settlement had been achieved. (Dkt. No. 36.) The joint letter motion submitted by the parties included the first proposed settlement agreement and stipulation of dismissal, which were negotiated under the supervision of United States Magistrate Judge David E. Peebles. (*Id.*)

On February 24, 2020, the Court issued a text order *sua sponte* granting the parties leave to file an amended settlement agreement and identifying several concerns that the Court had with the initial settlement agreement. (Dkt. No. 37.) For example, the Court requested that the parties specifically address the "very broad language concerning the [g]eneral [r]elease & [w]aiver by Plaintiff in this Settlement Agreement." (*Id*.)

---

[1] This matter is before me on consent of the parties pursuant to 28 U.S.C. § 636(c) and Northern District of New York Local Rule 73.1. (Dkt. No. 32.)

On March 23, 2020, the parties submitted an amended settlement agreement (the "Agreement"), which addressed some, but not all, of the Court's concerns.

## II. SETTLEMENT TERMS

The terms of the parties' settlement are memorialized in the Agreement that has been publicly filed with the Court.  (Dkt. No. 38, Attach. 1.)  The material terms of the Agreement include payment by Defendant to Plaintiff in the amount of $50,000.00.  (*Id*.)  Of the settlement amount ($50,000.00), $32,935.00 will be paid to Plaintiff for unpaid wages and liquidated damages.  (Dkt. No. 38, Attach. 1.)  The remaining $17,065.00 will be paid to Plaintiff's attorneys for attorneys' fees and costs.  (*Id*.)

The Agreement includes mutual release language and provides for execution of a stipulation of voluntary dismissal of the action with prejudice.  (Dkt. No. 38, Attach. 1; Dkt. No. 36, Attach. 2.)  In addition, the Agreement includes a non-disparagement clause.  (Dkt. No. 38, Attach. 1.)

## III. LEGAL STANDARD GOVERNING DISMISSAL OF FAIR LABOR STANDARDS ACT CLAIMS

Construing the relevant language of the FLSA, the Second Circuit has held that stipulated dismissals under Federal Rule of Civil Procedure 41(a)(1)(A)(ii) settling FLSA claims with prejudice require approval of either a district court or the Department of Labor to become effective.  *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015).[2]  Requiring such approvals furthers the FLSA's manifest purpose of insuring that workers receive

---

[2]   In contrast with accepted offers of judgment pursuant to Fed. R. Civ. P. 68, which do not require district court review and approval.  *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 414 (2d Cir. 2019) (declining to extend *Cheeks*'s judicial approval requirement to Rule 68(a) context).  However, the instant case does not involve an offer of judgment.

"'a fair day's pay for a fair day's work.'" *Cheeks*, 796 F.3d at 206 (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)).

The touchstone of the required review under *Cheeks* is that a settlement agreement must be fair and reasonable. *Lopez v. 41-06 Bell Blvd. Bakery LLC*, 15-CV-6953, 2016 WL 6156199, at *1 (E.D.N.Y. Oct. 3, 2016). Among the factors to be considered in the determining the issue of fairness are (1) the ranges of potential recovery by the plaintiff; (2) the litigation risks faced by the parties; (3) the extent to which the parties will avoid the burdens of expensive litigation; (4) whether the agreement results from good-faith, arm's-length negotiations involving experienced attorneys; and (5) whether there is any indicia of fraud or collusion. *Lopez*, 2016 WL 6156199, at *1 (citing *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)). In addition, when a proposed FLSA settlement includes payment of attorney's fees, the reasonableness of the fee award must also be examined. *Lopez*, 2016 WL 6156199, at *2; *Wolinsky*, 900 F. Supp. 2d at 336. When evaluating the overarching consideration of fairness, the court bears in mind that "the vast majority of FLSA cases . . . are simply too small, and the employer's finances too marginal, for proceeding with litigation to make financial sense if the district court rejects the proposed settlement." *Cheeks*, 796 F.3d at 206-07 (quotation marks omitted).

Other factors may weigh against settlement approval, such as:

> (1) "the presence of other employees situated similarly to the claimant"; (2) "a likelihood that the claimant's circumstance will recur"; (3) "a history of FLSA noncompliance by the same employer or others in the same industry or geographic region"; and (4) the desirability of "a mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace."

*Felix v. Breakroom Burgers & Tacos,* 15-CV-3531, 2016 WL 3791149, at *2 (S.D.N.Y. Mar. 8, 2016) (citations omitted).

## IV.   DISCUSSION

Having carefully reviewed the parties' Agreement, the Court concludes that much of it is legally satisfactory and the Court would be prepared to approve the overall settlement sum as substantively reasonable and achieved through procedurally fair means.[3]  However, the Court

---

[3]   While the potential maximum recovery if Plaintiff were to prevail is approximately $125,000.00 (including overtime payments, compensatory damages, liquidated damages, and attorneys' fees), the Court finds that the settlement amount of $50,000.00, fair because it represents a fair compromise in achieving a cessation of this litigation.  Both parties indicate that they entered the Agreement, at least in part, to avoid litigation risks and additional costs associated with proceeding with motion practice or a trial.  (Dkt. No. 38, Attach. 1 at 2-3.)  "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement."  *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (quotation marks omitted).  Here, "the [A]greement was reached early in the proceedings, reflecting the legitimate concerns of both sides to avoid time-consuming and potentially expensive litigation burdens."  *Goett v. VI Jets Int'l, Inc.*, 14-CV-8256, 2015 WL 3616961, at *2 (S.D.N.Y. Apr. 22, 2015); *see also Zamora v. One Fifty Fifty Seven Corp.*, 14-CV-8043, 2016 WL 1366653, at *1 (S.D.N.Y. Apr. 1, 2016) ("Beyond establishing claims and defenses at trial, proceeding with litigation would require further discovery and motion practice.").  Further, able and competent counsel on both sides facilitated the Agreement.  "Typically courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement."  *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013) (noting that "[d]uring the entire process, [the p]laintiffs and [the d]efendant were represented by counsel experienced in wage and hour law"); *see Santos v. Yellowstone Props., Inc.*, 15-CV-3986, 2016 WL 2757427, at *3 (S.D.N.Y. May 10, 2016) ("As to the fourth and fifth factors, there are no signs of fraud or collusion, and the settlement here was the product of arms'-length bargaining by experienced counsel.").

In addition, none of the factors that weigh against settlement approval are present here.  There is no evidence that other employees are similarly situated to Plaintiff's circumstances.  *See Browder v. Advertisement Carriers Enters., Inc.,* 15-CV-5594, 2016 WL 7031608, at *4 (S.D.N.Y. Nov. 30, 2016) (citing *Santos,* 2016 WL 2757427, at *3) ("The fact that no other employee has come forward with a claim supports settlement approval.").  "Second, because [Plaintiff] no longer work[s] for [D]efendant[ ], the Court has little concern that [D]efendant[ ] used improper leverage to secure the settlement."  *Santos,* 2016 WL 2757427, at *3 (citing *Cisneros v. Schnipper Rest. LLC,* 13-CV-6266, 2014 WL 67235, at *1 (S.D.N.Y. Jan. 8, 2014)).  The Court is also unaware of any "history of FLSA noncompliance" by Defendant, and Plaintiff's complaint "does not appear to raise novel factual or legal issues that would further the development of law in this area."  *Id.*

The Court examined the attorneys' fees provision contained in the settlement agreement, providing for recovery by counsel of one-third of the net recovery to Plaintiff, plus expenses.

5

declines to approve the Agreement in its present form because (a) its non-disparagement clause does not provide a carve-out for truthful statements, and (b) it contains an overbroad general release.

"[I]n *Cheeks,* the Second Circuit provided guidance as to the types of provisions that contravene the FLSA's remedial purpose of 'prevent[ing] abuses by unscrupulous employers, and remedy[ing] the disparate bargaining power between employers and employees.'" *Yang v. Matsuya Quality Japanese Inc.,* 15-CV-1949, 2017 WL 456464, at *1 (E.D.N.Y. Feb. 2, 2017) (quoting *Cheeks,* 796 F.3d at 207). The Second Circuit specifically disapproved of settlement agreements containing:

> (1) a battery of highly restrictive confidentiality provisions . . . in strong tension with the remedial purposes of the FLSA; (2) an overbroad release that would waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues; and (3) a provision that would set the fee for plaintiff's attorney . . . without adequate documentation to support such a fee award.

*Cheeks,* 796 F.3d at 206 (quotation marks omitted). "Courts in this Circuit also commonly decline to approve settlements containing . . . overbroad non-disparagement provisions." *Escobar v. Fresno Gourmet Deli Corp.,* 16-CV-6816, 2016 WL 7048714, at *2 (S.D.N.Y. Dec. 2, 2016). The Court now turns to these considerations.

### A. Mutual Non-Disparagement Clause

The Agreement contains a mutual "Public Statements and Non-Disparagement" clause. (Dkt. No. 38, Attach. 1 at ¶ 9.)

---

The Court also finds that provision to be reasonable, particularly when considered in the context of the itemized billing statements supplied by Plaintiff's counsel, which reveal that, at the customary rates charged by the attorneys and other professionals working on the case, a fee of $40,975.00 would be justified. (Dkt. No. 38, Attach. 2.)

With respect to the public statements portion of that clause, Defendant's Board of Directors, Chief Operating Officer, and Plaintiff, are prohibited from "mak[ing], or direct[ing] to be made . . . any false statements, either oral or written, regarding any events which took place during Plaintiff's employment with Defendant, this Settlement Agreement, or payment of Settlement Amount."  (Dkt. 38, Attach. 1 at ¶ 9.)

In addition, with respect to the non-disparagement portion of that clause, the Agreement states

> the Settling Parties further agree that neither Plaintiff nor Defendant's Board of Directors or Chief Operating Officer, now or in future, will make . . . disparaging statements intended to injure the personal and/or business reputation of Plaintiff or Defendant respectively.  For purposes of this Paragraph 9, the term 'disparaging' shall mean to depreciate by direct or indirect means to a person or entity not a Party to this Settlement Agreement, including referring to the Party disapprovingly, contemptuously, belittling, scornfully, derisively, or otherwise express a negative opinion, or cause damage to the reputation of a Party to the Settlement Agreement.

(*Id.*)

"Although not all non-disparagement clauses are *per se* objectionable, if the provision 'would bar plaintiffs from making any negative statement about the defendants, it must include a carve-out for truthful statements about plaintiffs' experience litigating their case.'" *Lazaro-Garcia v. Sengupta Food Servs.,* 15-CV-4259, 2015 WL 9162701, at *3 (S.D.N.Y. Dec. 15, 2015) (quoting *Lopez v. Nights of Cabiria, LLC,* 96 F. Supp. 3d 170, 180 (S.D.N.Y. 2015)); *see Snead v. Interim HealthCare of Rochester, Inc.*, 286 F. Supp. 3d 546, 553 (W.D.N.Y. 2018) (approving a settlement agreement that specifically stated "[a]ny party is allowed to make truthful statements related to or concerning the Action."); *Geskina v. Admore Air Conditioning Corp.,* 16-CV-3096, 2017 WL 1743842, at *3 (S.D.N.Y. May 3, 2017) ("Because [the non-disparagement clause] includes a carve-out for truthful statements, it is permissible."); *Cortes v.*

7

*New Creators, Inc.,* 15-CV-5680, 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016) ("[A]lthough the Agreement contains a non-disparagement provision, it includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case.").

Here, while the public statements portion of the clause specifically relates only to false statements, the non-disparagement portion of the clause contains no requisite carve out for truthful statements. As a result, the Agreement must be rejected on this basis.[4]

### B. Mutual Release Provisions

In the alternative, the Court rejects the Agreement because of the extremely broad general release provision that it contains.

"Some courts scrutinizing FLSA settlement have refused to approve settlements with broad releases of claims, concluding that they conflict with the FLSA's remedial purposes." *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP,* 13-CV-5008, 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016). "In this Circuit, courts routinely reject broad releases in FLSA cases of 'unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Felix,* 2016 WL 3791149, at *3 (quoting *Lopez,* 96 F. Supp. 3d at 181).

Here, the proposed mutual waiver and release provisions require Plaintiff to release Defendant,

> From any and all liabilities, agreements, compensation, policies, claims, demands, damages and causes of action of every kind and nature, related to or arising out of any common law, federal, state or local laws, rules or regulations, known or unknown, from the beginning of time to the date hereof, including but not limited to, those claims under the Age Discrimination in Employment Act ("ADEA"), the Older Worker Benefit Protection Act ("OWBPA"), the Rehabilitation Act of 1973, Title VII of

---

[4] The Second Circuit has cautioned that "[i]f a district court concludes pursuant to *Cheeks* that a proposed settlement is unreasonable in whole or in part, the court cannot simply rewrite the agreement -- it must reject the agreement or give the parties an opportunity to revise it." *Fisher v. SD Protection Inc.*, 948 F.3d 593, 605 (2d Cir. 2020).

> the Civil Rights Act of 1964, as amended ("Title VII"), the Americans with Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), the Equal Pay Act ("EPA"), the Employee Retirement Income Security Act of 1974 ("ERISA") . . .

(Dkt. No. 38, Attach. 1 at ¶ 6[a][i].)

It is difficult to imagine a release provision with more breadth than one that relates to actions of "every kind and nature . . . known or unknown, from the beginning of time to the date hereof." The Court explicitly raised concerns about this provision and asked the parties to submit additional "reasoning and justification for the very broad language." (Dkt. No. 37 [citing *Weidong Li v. Ichiban Mei Rong Li Inc.,* 16-CV-0863, 2017 WL 1750374, at *3 (N.D.N.Y. May 4, 2017) (Peebles, M.J.); *Souza v. 65 St. Marks Bistro,* 15-CV-0327, 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015); *Guerra-Alonso v. West 54 Deli, Corp.,* 14-CV-7247, 2015 WL 3777403, at *2 (S.D.N.Y. May 22, 2015)].)

However, the parties' amended submission did not address or provide any basis that could support the extremely broad language contained in the Agreement. *Compare Bukhari v. Senior*, 16-CV-9249, 2018 WL 559153, at *2 (S.D.N.Y. Jan. 23, 2018) (rejecting a settlement agreement where the overly broad—though facially mutual—release provision required the plaintiff to "release and forever discharge Defendants . . . from any and all claims, known or unknown, asserted or unasserted, which [Bukhari] ha[s] or may have against [defendants]" including, but not limited to, claims arising under ERISA, the Civil Rights Acts of 1964 and 1991, the Sarbanes-Oxley Act of 2002, and claims sounding in "contract" or "tort."), *Ezpino v. CDL Underground Specialists, Inc.*, 14-CV-3173, 2017 WL 3037483, at *3 (E.D.N.Y. June 30, 2017) (approving a settlement with release language where "the parties' release language here is limited to causes of action 'related to claims for unpaid wages and overtime arising under the [FLSA], 29 U.S.C. § 216(b).'"), *report and recommendation adopted*, 2017 WL 3037406

(E.D.N.Y. July 17, 2017), *Rivera v. SA Midtown LLC*, 16-CV-2097, 2017 WL 1378264, at *1 (S.D.N.Y. Apr. 11, 2017) (rejecting a settlement agreement that required the plaintiff to "release and forever discharge [the d]efendants . . . from any and all claims, known and unknown, asserted or unasserted, which [the plaintiff] may have . . . as of the date of execution of this Agreement."), *Chimbay v. Pizza Plus at Staten Island Ferry Inc*., 15-CV-2000, 2016 WL 8290810, at *1 (S.D.N.Y. Dec. 1, 2016) (rejecting a settlement agreement because, *inter alia*, it "contains such an overbroad general release" which "requires Plaintiff to 'relinquish, waive, and release all of the Defendants . . . from all possible claims . . ., whether presently known or unknown by Plaintiffs, which may have arisen from the beginning of time through the date of their signatures on [the] Agreement."), *Flores-Mendieta v. Bitefood Ltd.*, 15-CV-4997, 2016 WL 1626630, at *2 (S.D.N.Y. Apr. 21, 2016) (quoting *Lopez v. Nights of Cabiria*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)) (rejecting mutual general release because "the Court cannot 'countenance employers using FLSA settlements to erase all liability whatsoever in exchange for . . . payment of wages allegedly required by statute.'"), *Batres v. Valente Landscaping, Inc.*, 14-CV-1434, 2016 WL 4991595, at *3 (E.D.N.Y. Sept. 15, 2016) (finding that the release provision was overly broad where it required the plaintiffs to "release 'any and all *other employment-related claims* arising up to and including the date [the p]laintiffs sign [the] Agreement.'" (emphasis added)), *Lazaro-Garcia*, 2015 WL 9162701, at *2 ("If the parties wish to obtain approval of their settlement, any release provision must be limited to the claims at issue in this action."), *Thallapaka v. Sheridan Hotel Assocs. LLC*, 15-CV-1321, 2015 WL 5148867, at *1 (S.D.N.Y. Aug. 17, 2015) ("The Agreement here contains a general release that is far too sweeping to be fair and reasonable."), *Martinez v. Gulluoglu LLC*, 15-CV-2727, 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) ("The [c]ourt will not approve a release provision that

extends beyond the claims at issue in this action."), *and Camacho v. Ess-A-Bagel, Inc.*, 14-CV-2592, 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014) (rejecting a settlement agreement that included a release that "purport[s] to waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues"), *with Snead*, 286 F. Supp. 3d at 555-56 (approving a settlement agreement that included a broad release provision where (a) the plaintiff was no longer employed by the defendant, (b) the release at issue was mutual, and (c) the case was not a class action and thus, there was no danger that the overbroad release would bind class members who had no bargaining power concerning the settlement terms), *Weidong Li v. Ichiban Mei Rong Li Inc*., 16-CV-0863, 2017 WL 1750374, at *3 (N.D.N.Y. May 4, 2017) (Peebles, M.J.) (approving a proposed settlement agreement that contained relatively broad release language where "the relationship between the parties terminated in February 2015, and there is no indication of any other actual or potential claims possessed by plaintiff against any of the three defendants named in this action."), *and Souza v. 65 St. Marks Bistro*, 15-CV-0327, 2015 WL 7271747, at *4-7 (S.D.N.Y. Nov. 6, 2015) (approving a settlement agreement with a general release provision after modifying it to be mutual and noting that (a) there was no ongoing relationship between the parties, (b) the parties stressed the importance of these release provisions, and (c) it was not a class-action lawsuit).

Without either a "narrower release consistent with the standards above or a concrete and persuasive explanation of the practical benefit [Plaintiff] stands to realize in exchange for broadly releasing all claims against" Defendant, the Court cannot approve the Agreement. *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 229 (S.D.N.Y. 2016).

**ACCORDINGLY**, it is

**ORDERED** that the parties' Amended Settlement Agreement (Dkt. No. 38, Attach. 1) is **REJECTED** at this time.  The parties may proceed in one of the following three ways.

(1) The parties may file a revised agreement by May 29, 2020, that (a) includes a carve-out for truthful statements in any non-disparagement clause, and (b) does not include a general release provision that extends beyond the claims at issue in this action. If the parties file a revised agreement, the Court will, at that time, assess the fairness and reasonableness of the proposed settlement.

(2) The parties may file a joint letter by May 29, 2020, that indicates their intention to abandon settlement and to continue to litigate this matter.  If they do so, the Court will set a next conference in this matter.

(3) The parties may file (a) an accepted offer of judgment pursuant to Fed. R. Civ. P. 68, or (b) stipulate to a dismissal of this case *without* prejudice, as such settlements do not require court approval.  *See Mei Xing Yu*, 944 F.3d at 414 (declining to extend *Cheeks*'s judicial approval requirement to Rule 68(a) context); *Cheeks*, 796 F. 3d at 201 n.2 (leaving for another day the question of whether parties may settle such cases and dismiss without prejudice without approval of the district court or the Department of Labor).

**SO ORDERED.**

Dated: April 29, 2020
       Binghamton, New York

*Miroslav Lovric*
Miroslav Lovric
U.S. Magistrate Judge